UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE GLICOS,** | : | |
| **Plaintiff** | : | |
| v. | : | CIVIL ACTION NO. 3:CV-05-2561 |
| **JO ANNE B. BARNHART,** | : | (CONABOY, D.J.) |
| **Commissioner of** | | (MANNION, M.J.) |
| **Social Security** | : | |
| **Defendant** | : | |

### REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the Plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act, ("Act").  42 U.S.C. §§ 1381-1383f.

## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed an application for SSI on November 7, 2003, alleging disability since April 1, 1999, due to degenerative disc disease, osteoarthritis, low back pain, deep vein thrombosis, and poor circulation.  (TR. 16, 44-47, 52).  The state agency denied her claim initially on February 25, 2004.  (TR. 29-32). The Plaintiff filed a timely request for a hearing (TR. 33), and a hearing was held before an Administrative Law Judge (ALJ) on June 8, 2005.  (TR. 273-295).  The Plaintiff, represented by counsel, testified and a vocational expert (VE) testified at the hearing.  (TR. 275-295).  The Plaintiff was denied benefits pursuant to the ALJ's decision

of June 22, 2005.  (TR. 13-23).

The Plaintiff filed a request for review of the ALJ's decision.  (TR. 11-12).  The Appeals Council denied her request on October 14, 2005, thereby making the ALJ's decision the final decision of the Commissioner.  (TR. 5-7).  42 U.S.C. § 405(g).  That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 10 and 13).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

> experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (2004).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. § 404.1520(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. 20 C.F.R. §§404.1520(e)-(f).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer,* 186 F.3d at 428.  Then the burden of proceeding

shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).  This is Step Five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act.  (TR. 16, 22).  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful work activity since her alleged disability onset date, April 1, 1999.  (TR. 17).  At step two, the ALJ concluded that the Plaintiff's deep vein thrombosis and circulation problems were not severe within the meaning of the Regulations.  (TR. 17).  Also at step two, the ALJ concluded that Plaintiff's cervical spine abnormality and obesity were severe impairments within the meaning of the Regulations. (TR. 17).  At step three, the ALJ found that Plaintiff's severe impairments of cervical spine abnormality and obesity were not severe enough to meet or medically equal, either singly or in combination, the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (TR. 17).  The ALJ paid particular attention to Listing 1.04 (Disorders of the Spine) but found that the Plaintiff failed to meet the listing requirements.  (TR. 17).  20 C.F.R Part 404, Subpart P, Appendix 1, Listing 1.04.  The ALJ noted that there is no listing for obesity. (TR. 17).

At step four, the ALJ found that the Plaintiff has no past relevant work. (TR. 18, 20, 22).  Accordingly, the ALJ moved on to step five and determined that the Plaintiff retained the residual functional capacity (RFC) to perform a significant range of sedentary work.  Based on the testimony of the VE and Medical Vocational Rules 202.21 and 201.27, the ALJ determined that such

4

work existed in the national economy in significant numbers. (TR. 21-22). Thus, the Plaintiff was found to be not disabled within the meaning of the Act. (TR. 18).  20 C.F.R. § 416.920(g).

The relevant time period for this case is April 1, 1999, the alleged onset date of disability, through June 22, 2005, the date of the ALJ's decision.

## IV.  BACKGROUND.

### *A. Factual Background.*

The Plaintiff, forty-eight years old at the time of the ALJ's decision, was considered a "younger" individual under the Regulations.  (TR. 16, 276).  20 C.F.R. §§ 404.1563 and 416.965.  Plaintiff has a high school education and no past relevant work experience.  (TR. 16, 277).

The Plaintiff alleges disability since April 1, 1999, due to degenerative disc disease, osteoarthritis, low back pain, deep vein thrombosis, and poor circulation.  (TR. 44-47).  Plaintiff testified that she fell in May 2002 resulting in a herniated disc in her neck.  (TR. 278).  Plaintiff treats her lower back by walking, doing pelvic tilts, and doing exercises on a ball.  (TR. 278-279).  She testified that she does not do any specific treatment for her neck.  (TR. 279). Plaintiff takes Elavil and Relafen for pain and a generic form of Prevacid for her acid reflux.  (TR. 279).  She stated that the Elavil helps her sleep through the night.  (TR. 279).  Plaintiff stated that the medication sometimes makes her groggy.  (TR. 285).  Plaintiff also testified that she has a hiatal hernia, however she is not on any medication for that condition.  (TR. 280).  Plaintiff has osteoarthritis in her back, neck and spine. (TR. 282).  She received physical therapy and takes the Elavil and Relafen to treat her osteoarthritis. (TR. 282).  Plaintiff stated that she suffers from hypoglycemia, however she does not take medication for that condition, she just avoids eating sugar. (TR. 282).

Plaintiff testified that she has pain in her neck, back and leg. The pain occurs when she sits, especially on a hard chair. (TR. 283). The pain also occurs when Plaintiff walks and is active. (TR. 283). Plaintiff lays down to ease her pain. (TR. 283-284).

Plaintiff has no past relevant work; when she had her daughter she decided to stay home with her. (TR. 291). Plaintiff has not worked for more than six months at a time, she indicated that most of her work was at her church and her daughter's school. (TR. 59, 291-292). In her Disability Report, Plaintiff stated that she last worked on October 31, 2003. (TR. 59). Plaintiff was caring for an elderly woman but was let go, claiming her pain affected her ability to perform. (TR. 52, 59).

Plaintiff testified that she wakes up around 8:00 a.m. or 9:00 a.m. (TR. 286). Plaintiff testified that she tries to get out several times a day. (TR. 284). She walks, with a walker, and stated that twenty to thirty minutes may be too much walking. (TR. 284). Plaintiff goes to the mall or Wal-Mart to walk. (TR. 284, 289). Plaintiff also testified that she can sit for thirty minutes if her feet are elevated and she has been resting for a few days. (TR. 294). Plaintiff's daughter helps with the household chores, though Plaintiff will occasionally help with the laundry and dishes. (TR. 286-287). Plaintiff reported that she cannot mow the law, do yard work, take out the garbage, vacuum or perform other household cleaning. (TR. 63). She indicated that she tries not to carry grocery bags, but if she does she can carry one bag at a time, though with pain. (TR. 63). Plaintiff goes to church twice a week for forty-five to eighty minutes. (TR. 287). Plaintiff also testified that she drives. (TR. 284).

A vocational expert, Sean Hanahue, testified at the ALJ hearing. (TR. 292-294). The ALJ asked the VE to hypothetically consider an individual with no past relevant work who could perform work with a sit/stand option; lifting

no more than twenty pounds occasionally and ten pounds frequently; with occasional bending; no balancing, stooping, kneeling, crouching or crawling; no overhead work; and reaching only within arms length. (TR. 292). The VE responded that such an individual would be able to perform the jobs of a small parts assembler with 520 jobs in the state of Pennsylvania; and a garment inspector. (TR. 292-293). Both jobs are sedentary, unskilled jobs with an Specific Vocational Preparation (SVP) of 2. (TR. 292-293).

The ALJ then asked the VE to consider that same hypothetical, but with reduced lifting of ten pounds. (TR. 293). The VE responded that such an individual could perform the previously identified jobs, as well as the job of a video monitor. (TR. 293). The VE stated that a video monitor job is a sedentary, unskilled job with an SVP of 2 and with 280 jobs in the state of Pennsylvania. (TR. 293). The VE then stated that if such an individual would require unscheduled breaks to lay down for a sustained period of time during the workday, they would not be able to sustain gainful employment. (TR. 293).

### B. Medical Background.

Plaintiff began treating with Tahirul Hoda, M.D., in 2002. (TR. 123-128). On December 26, 2002, Dr. Hoda noted that Plaintiff had mild L-5 tenderness in her back, and right leg and calf tenderness. (TR. 128). In October 2003, Plaintiff reported that she experienced low back pain radiating down the right side to her hip, thigh and leg. (TR. 126). She stated that she is unable to walk more than a block before experiencing pain in her leg. (TR. 126). Plaintiff had a positive straight leg raising test on the right at 60 degrees. (TR. 126). Dr. Hoda ordered an MRI. (TR. 126, 132). Plaintiff underwent an MRI of the lumbar spine on October 8, 2003, interpreted by Christopher Joy, M.D. (TR. 132). The MRI revealed mild degenerative spondylosis at L1-2, no disc herniation and no spinal canal stenosis. (TR.

132).

Jeng Gu, M.D., interpreted an MRI of Plaintiff's cervical spine on December 23, 2003, finding that it revealed curvature of the spine and some dehydration of the disc material, but no narrowed nerve root canal; either asymmetrical spur formation or herniation at C3/C4 and somewhat narrowed right side of the nerve root canal, and some pressure on the ventral aspect of the spinal cord; probable osteophyte formation at C4/C5 and C5/C6 with some pressure upon the ventral aspect of the spinal cord at C4/C5, and well maintained nerve root canals; and the remainder of the examination was unremarkable. (TR. 130). Dr. Gu also interpreted an MRI of the thoracic spine on December 23, 2003 and indicated that it revealed no suggestion of fracture or subluxation or any bony destructive process; and unremarkable spinal cord, spinal canal and nerve root canals. (TR. 131).

Plaintiff began physical therapy in November 2003. (TR. 79-83). The physical therapist diagnosed low back pain, noting decreased lumbar flexion, poor posture and deconditioning. (TR. 79). Plaintiff's long term goal was to begin exercising two to three times a week and consistently perform to develop a healthier lifestyle. (TR. 79). From April to June 2004, Plaintiff continued physical therapy. (TR. 170). She consistently complained of pain and discomfort. (TR. 152-170). On May 17, 2004, the physical therapist noted that Plaintiff moved with ease when distracted. (TR. 163-164). Plaintiff was discharged from physical therapy on June 4, 2004 and placed on a home program. (TR. 157). The physical therapist recommended continued use of a TENS unit and aqua therapy. (TR. 157).

Plaintiff was referred to G. Timothy Reiter, M.D., in February 2004 for a neurosurgical consultation. (TR. 141-142). Dr. Reiter performed a physical examination on February 10, 2004 and overall found that Plaintiff was in no acute distress. (TR. 142). Motor strength in her upper and lower extremities

was full at 5/5, she had equal reflexes, and a sensory examination was intact. (TR. 142). Dr. Reiter reviewed Plaintiff's MRIs and noted that there were no structural abnormalities on the MRIs. (TR. 142). Dr. Reiter assured Plaintiff that she did not need surgery. (TR. 142). He recommended aqua therapy and treatment with a physician specializing in rehabilitation. (TR. 142).

Plaintiff treated with Jonathan L. Costa, M.D., Ph.D., on February 11, 2004 for a physiatric consultation. (TR. 144-146). Dr. Costa noted that Plaintiff walked within functional limits and moved good on the examination table. (TR. 145). Plaintiff's upper extremity sensation was intact, she had good upper extremity posture and use, but she had pain in her neck. (TR. 145). Plaintiff's lower extremity strength was intact with mild to moderate hip flexion, and pain in the right hip. (TR. 145). Dr. Costa noted Plaintiff experienced pain over the C3/C4 and C6/C7 vertebrae. He noted a cervical strain/sprain with questionable C3-C4 and C6-C7, cervicogenic headache, sacral strain/sprain with sacroiliac joint derangement and pelvic obliquity and rotation, leg-length discrepancy, bilateral sacroiliitis, bilateral piriformis syndrome, and myofascial syndrome. (TR. 145). Dr. Costa stated that Plaintiff appeared to be disabled and recommended she continue with her social security disability application. (TR. 146). He recommended physical therapy and pain and muscle spasm medication. (TR. 145-146).

John W. Lockard, M.D., examined Plaintiff on March 25, 2004. (TR. 198-200). Dr. Lockard noted low back pain secondary to right sacroiliac joint strain; headache, neck and arm pain with a history of degenerative disc disease of the cervical spine; and morbid obesity affecting the previous two diagnoses. (TR. 199). On examination, Plaintiff's lumbar spine was nontender, but was tender over the right sacroiliac joint and musculature of the upper lumbar area. (TR. 199). Plaintiff had a negative straight leg raising test, equal deep tendon reflexes, intact sensation, decreased motor strength

9

in the right leg, and Plaintiff was able to heel and toe walk adequately. (TR. 199). Dr. Lockard reviewed Plaintiff's MRIs noting that the MRI of the cervical spine revealed disc bulging, the MRI of the lumbar spine revealed mild disc disease, and the MRI of the thoracic spine was benign. (TR. 199). Dr. Lockard recommended physical therapy, weight loss, and possible steroid injections or nerve blocks. (TR. 199-200). Dr. Lockard noted that Plaintiff did not seem interested in physical therapy and was not motivated. (TR. 199-200).

Plaintiff was treated in the emergency room on July 6, 2004 by Sucharita Raman, M.D., for pain in her thighs and knees. (TR. 171). Dr. Raman noted that Plaintiff suffered from arthritis of the knees and chronic low back pain secondary to morbid obesity. (TR. 172). Dr. Raman noted that the MRI of Plaintiff's lumbar spine was not very remarkable and the MRI of her cervical spine revealed a minor disc herniation and osteophyte formation. (TR. 171). Dr. Raman strongly recommended weight loss and ibuprofen or Tylenol for pain. (TR. 172).

On August 26, 2004, Plaintiff underwent an x-ray of the pelvis and hip. (TR. 176). Both x-rays revealed no significant abnormalities. (TR. 176).

Plaintiff again attended physical therapy from March through May 2005. (TR. 245-260). On discharge, the physical therapist noted that Plaintiff was able to tolerate aqua therapy with increased symptoms; Plaintiff's cervical spine symptoms decreased, though she reported she was unable to make progress with cervical spine range of motion. (TR. 246). Plaintiff continued to experience pain in the lumbar spine on forward bending and rotation. (TR. 246). The physical therapist noted that Plaintiff's pain decreased 25% in two weeks, and her range of motion and motor function increased 25% in two weeks; her ambulation improved; and her performance in activities improved. (TR. 246). Physical therapy notes encouraged Plaintiff to continue walking,

up to thirty minutes per day. (TR. 255). Plaintiff reported she shopped one day for four hours, she felt her good days were increasing in frequency, she felt a little stronger, she was busy with a church convention, and she walked for an hour. (TR. 250-255).

### C. State-agency physician's report.

Sharon Wander, M.D., a State-agency physician, reviewed Plaintiff's records on February 4, 2004 and completed a Residual Functional Capacity Assessment. (TR. 133-140). Dr. Wander's primary diagnosis was mild degenerative spondylosis of L1/ L2; her secondary diagnosis was coronary artery disease ("CAD"); and other alleged impairments were seborrheic dermatitis, obesity, and fibromyalgia. (TR. 133). Dr. Wander found that Plaintiff could occasionally lift fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk and sit, with normal breaks, about six hours in an eight-hour workday; and push and/or pull unlimitedly. (TR. 134). Dr. Wander found postural limitations. She believed Plaintiff could occasionally or never climb ladders, ropes or scaffolds; she could frequently balance, kneel, crouch and crawl; and occasionally stoop. (TR. 135). Dr. Wander found no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (TR. 136-137). Dr. Wander ultimately found Plaintiff's symptoms only partially credible. (TR. 138).

## V. DISCUSSION.

The Plaintiff contends that the ALJ erred in: (1) failing to give special significance to the opinions of the treating physicians; and (2) failing to properly address the testimony of Plaintiff regarding her usual daily activities and her complaints concerning pain. (Doc. 10 at 8).

### A. Whether the ALJ erred in failing to give special significance to the opinions of the treating physicians.

The Plaintiff argues that the ALJ erred in failing to give special weight to the opinions of Drs. Gu, Hoda and Costa. (Doc. 10 at 9-12). The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id*. at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical

opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887, at *5 (E.D.P.A. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985)).

Plaintiff argues that the ALJ erred in failing to credit the opinion of Dr. Gu, the radiologist that interpreted Plaintiff's MRI. (Doc. 10 at 9-10). Dr. Gu noted that the MRI of the cervical spine on December 23, 2003 revealed curvature of the spine and some dehydration of the disc material, but no narrowed nerve root canal; either asymmetrical spur formation or herniation at C3/C4 and somewhat narrowed right side of the nerve root canal, and some pressure on the ventral aspect of the spinal cord; probable osteophyte formation at C4/C5 and C5/C6 with some pressure upon the ventral aspect of the spinal cord at C4/C5, and well maintained nerve root canals; and the remainder of the examination was unremarkable. (TR. 130). Dr. Gu found that the MRI of Plaintiff's thoracic spine on December 23, 2003 revealed no suggestion of fracture or subluxation or any bony destructive process; and unremarkable spinal cord, spinal canal and nerve root canals. (TR. 131).

Contrary to Plaintiff's argument, it appears that the ALJ did give significant weight to Dr. Gu's MRI reports when rendering his decision. The

ALJ summarized and considered the MRI reports, however Dr. Gu's interpretations of the MRIs do not support a finding of disability. (TR. 19). The ALJ also considered Dr. Reiter's report which referenced Dr. Gu's MRI reports. Dr. Reiter noted that Plaintiff's MRIs revealed no structural abnormalities. (TR. 142). Dr. Reiter concluded that Plaintiff did not need surgery and recommended conservative treatment consisting of aqua therapy and a physiatric consultation. (TR. 142).

Plaintiff also argues that the ALJ erred in not giving special weight to the opinion of treating physician Dr. Hoda. (Doc. 10 at 10). Plaintiff states that Dr. Hoda reported that Plaintiff suffered from cervical disc disease, chronic neck and back pain, a urinary tract infection, and abnormal bowel movements. (Doc. 10 at 10). However, we note that the existence of a medical condition alone does not demonstrate a disability for purposes of the Act. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). Thus, the issue is not only whether this condition exists, but whether it results in a functional disability that prevents the Plaintiff from performing substantial gainful activity. Dr. Hoda never opined that Plaintiff was disabled. Accordingly, Dr. Hoda's report that Plaintiff suffers from these impairments does not establish that she is disabled.

Plaintiff next argues that the ALJ erred in not giving significant weight to the opinion of Dr. Costa. (Doc. 10 at 10-11). The ALJ rejected the opinion of Dr. Costa because he found it "inconsistent with the other medical evidence" in the record. (TR. 20). The ALJ noted that Dr. Costa's medical report of February 10, 2004 expressed the opinion that Plaintiff appeared to be disabled. (TR. 144-146). However, the ALJ noted that Plaintiff has not received any treatment for her cervical spine impairment and has not seen a specialist since treating with Dr. Reiter in 2004. (TR. 20). The Third Circuit has held that "[t]he ALJ must consider all the evidence and give some reason

for discounting the evidence she rejects." *Plummer,* 186 F.3d at 429. It appears that the ALJ gave adequate consideration to the opinions of Drs. Gu, Hoda and Costa and properly evaluated that evidence and concluded that Plaintiff was not disabled.

> ***B.   Whether the ALJ erred in failing to properly address the testimony of Plaintiff regarding her usual daily activities and her subjective complaints of pain.***

The Plaintiff argues that the ALJ erred in ignoring Plaintiff's testimony regarding her daily activities. (Doc. 10 at 12). Plaintiff argues that the ALJ erred by stating that Plaintiff testified she can sit for up to thirty minutes. (Doc. 10 at 12). Plaintiff argues that she can only sit for up to thirty minutes if her feet are elevated and she has rested for a few days. Plaintiff also testified that her daughter does most of the household work and cooking and Plaintiff occasionally helps with the laundry and dishes. (TR. 286-287). While it is true that an activity such as "shopping for the necessities of life is not a negation of disability... [and] [d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," *Smith v. Califano*, 637 F.2d 968, 971 (3d. Cir. 1981), here the objective medical evidence does not establish that Plaintiff is disabled. As stated, the only doctor that concluded Plaintiff was disabled is Dr. Costa, after a one-time consultative examination. (TR. 146). However, the ALJ did not give controlling weight to Dr. Costa's opinion. (TR. 20).

Here, the ALJ did not ignore Plaintiff's testimony regarding her daily activities. Rather, the ALJ considered such testimony but ultimately concluded that Plaintiff was not entirely credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*,

127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")." *Frazier v. Apfel*, 2000 WL 288246 (E.D.P.A. 2000).

At the same time, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir. 1987)); *Ferguson,* 765 F.2d at 37).

The ALJ found the Plaintiff was not entirely credible. (TR. 20). He noted that Plaintiff testified she can only lift one pound, however "she uses a walker, which shows a strength and grip capacity for much greater than one pound." (TR. 20). The ALJ also noted that records indicate Plaintiff walks very often, sometimes reporting walks up to one hour. (TR. 20). The ALJ found that most of Plaintiff's physical examinations were essentially normal and did not reveal any decreased strength or motor power, except for right hip flexion. (TR. 20).

Upon physical examination by Dr. Reiter in February 2004, he noted that Plaintiff had full motor strength in her upper and lower extremities, she had equal reflexes, and a sensory examination was intact. (TR. 142). Although Dr. Costa stated that Plaintiff appeared to be disabled and had pain and tenderness in her neck and back, he also noted that she walked within functional limits, moved good on the examination table, had intact upper extremity sensation, and had good upper extremity posture and use. (TR. 145). Dr. Costa further noted that Plaintiff's lower extremity strength was

intact with mild to moderate hip flexion, and pain in the right hip.  (TR. 145). In March 2004, Dr. Lockard found that Plaintiff had a negative straight leg raising test, equal deep tendon reflexes, intact sensation, but decreased motor strength in the right leg. (TR. 199). Dr. Lockard also noted that Plaintiff experienced pain and recommended physical therapy, weight loss, and possible steroid injections or nerve blocks.  (TR. 199-200).  Dr. Raman noted that Plaintiff's MRI of the lumbar spine was not very remarkable and the MRI of her cervical spine revealed a minor disc herniation and osteophyte formation. (TR. 171). Dr. Raman recommended weight loss and conservative treatment of ibuprofen or Tylenol.  (TR. 171).

The ALJ evaluated Plaintiff's subjective complaints along with the objective medical evidence. In his decision, the ALJ summarized Plaintiff's testimony at the hearing regarding her subjective allegations of pain, all of Plaintiff's daily activities, and her subjective complaints to doctors. (TR. 18-20). The ALJ stated that he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." (TR. 18).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. §404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on

17

the claimant's ability to work. 20 C.F.R. §404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p.

The ALJ determined that Plaintiff had the RFC for sedentary work. (TR. 20). The ALJ found that Plaintiff could "lift and carry ten pounds occasionally and less than ten pounds frequently. She must have a sit/stand option in an eight-hour workday. She is unable to perform any overhead work and is limited to reaching at arms' length only. She is unable to crouch, crawl, kneel, stoop or balance." (TR. 20). It appears that the ALJ adequately considered all of the evidence in the record, including Plaintiff's daily activities and subjective complaints. Based on the foregoing, the ALJ's conclusion that the Plaintiff was not fully credible and capable of performing sedentary work is supported by substantial evidence.

## VI. RECOMMENDATION.

Based on the foregoing, it is recommended that the Plaintiff's appeal be **DENIED**.

                                  **s/ Malachy E. Mannion**
                                  **MALACHY E. MANNION**
                                  **United States Magistrate Judge**

**Dated:** January 16, 2007
O:\shared\REPORTS\2005 Reports\05-2561.01.wpd